# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 Case |
| RELIANT ENERGY CHANNELVIEW, | ) |
| LP, et al., | ) Case No. 07-11160 (MFW) |
| | ) |
| Debtors, | ) Jointly Administered |
| | ) |
| KELSON CHANNELVIEW LLC | ) |
| (f/k/a KELSON ENERGY IV LLC), | ) |
| | ) |
| Appellant, | ) |
| | ) Civil Action No. 08-409 (JJF) |
| v. | ) Bankruptcy Appeal No. 08-41 |
| | ) |
| RELIANT ENERGY CHANNELVIEW, LP, *et al.* | ) |
| | ) |
| Appellees. | ) |
| | ) |

---

## APPELLANT'S ANSWERING BRIEF IN OPPOSITION TO MOTION TO DISMISS APPEAL OF KELSON CHANNELVIEW LLC (f/k/a KELSON ENERGY IV LLC)

Garvan F. McDaniel, Esq. (#4167)
BIFFERATO GENTILOTTI LLC
800 North King Street
Wilmington, DE 19801
Telephone:    (302) 429-1900
Facsimile:    (302) 429-8600

-and-

Andrew K. Glenn, Esq.
Jeffrey R. Gleit, Esq.
KASOWITZ, BENSON, TORRES
 & FRIEDMAN LLP
1633 Broadway
New York, New York 10019
Telephone:    (212) 506-1700
Facsimile:    (212) 506-1800

*Attorneys for Appellant*

TABLE OF CONTENTS

Page

NATURE AND STAGE OF THE PROCEEDINGS ................................................. 1

SUMMARY OF ARGUMENT ........................................................................... 1

STATEMENT OF FACTS ................................................................................ 4

ARGUMENT ................................................................................................. 6

    I.   The Appeal Was Timely Filed ................................................................ 6

       A. The Standards For Determination Of Finality Of Bankruptcy Orders .................... 6

       B. The Bidding Procedures Order Was Final Under
          The Third Circuit's Pragmatic Test. ................................................... 8

          i.   The Impact Of The Kelson Break-Up Fee Is Negligible. ................ 8

          ii.   The Necessity For Further Fact Finding Renders
             The Bidding Procedures Order Interlocutory. ................................ 9

          iii.   The Bidding Procedures Order Did Not Have A
             Preclusive Effect On Litigation. ................................................. 10

          iv.   Judicial Economy Militates Heavily In Favor Of Finding
             That The Bidding Procedures Order Was Interlocutory. ................ 10

CONCLUSION ............................................................................................ 12

TABLE OF AUTHORITIES

Page

CASES

*In re Adelphia Communications Corp.*, 333 B.R. 649 (Bankr. S.D.N.Y. 2005). .......................... 11

*Century Glove, Inc. v. First Amer. Bank of N.Y.*,
  860 F.2d 94 (3d Cir. 1988) ...................................................................................... 7, 9

*In re Chateaugay Corp.*, 922 F.2d 86 (2d Cir. 1940). .................................................................. 7

*Dal-Tile Intl., Inc. v. Color Tile, Inc.*, 203 B.R. 554 (Bankr. D. Del. 1996) ................................ 10

*DDJ Capital Management, LLC v. Fruit of the Loom, Inc.*
  *(In re Fruit of the Loom, Inc.)*, 274 B.R. 631 (Bankr. D. Del. 2002) ......................... 8

*In re Elsinore Shore Assocs.*, 82 B.R. 339 (Bankr. D.N.J. 1988)................................................... 9

*Farmland Livestock Services v. United Agri Prods., Inc.*
  *(In re Farmland Industries, Inc.)*, 289 B.R. 122 (8th Cir. B.A.P. 2003)................................... 7

*In re Fugazy Express, Inc.*, 982 F.2d 769 (2d Cir. 1992) ............................................................ 10

*In re Integrated Resources, Inc.*, 3 F.3d 49 (2d Cir. 1993)............................................................ 7

*In re Kurtzman*, 194 F.3d 54 (2d Cir. 1999).................................................................................. 7

*Official Comm. of Equity Sec. Holders v. Finova Capital Corp. (In re Finova Capital Corp.)*,
  No. 06-040, 2006 U.S. Dist. LEXIS 19141 (D. Del. Apr. 13, 2006)........................................ 10

*In re Porter*, 961 F.2d 1066, 1072 (3d Cir. 1992) ...................................................................... 11

*United States Trustee v. Bethlehem Steel Corp. (In re Bethlehem Steel Corp.)*,
  2003 WL 21738964 (Bankr. S.D.N.Y. July 28, 2003) ............................................................ 11

*Unsecured Creditors' Committee v. Belgravia Paper Co. (In re Great Northern Paper, Inc.)*,
  289 B.R. 497 (Bankr. D. Me. 2003) .............................................................................. 7, 10

STATUTE

28 U.S.C. § 158(a) ......................................................................................................................... 7

Appellant Kelson Channelview LLC (f/k/a Kelson Energy IV LLC) ("Kelson" or "Appellant"), by its attorneys, respectfully submits this answering brief to Appellees' *Motion to Dismiss Appeal of Kelson Channelview LLC (f/k/a Kelson Energy IV LLC)* [Docket No. 5] (the "Dismissal Motion")[1] as follows:

## NATURE AND STAGE OF THE PROCEEDINGS

On June 13, 2008, Appellant timely filed its *Notice of Appeal of Kelson Channelview LLC (f/k/a Kelson Energy IV LLC) from Order Approving Debtor's Proposed Bid Protections (Dk. No 319), and Order Authorizing (1) the Sale or Transfer of Certain Assets of Reliant Energy Channelview LP and Reliant Energy Services Channelview LLC Free and Clear of Liens, Claims and Encumbrances and Other Interests, (II) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leased in connection Therewith, (III) the Assumption of Certain Liabilities, and (IV) Granting Related Relief (Dk. No 479)* (the "Notice of Appeal"). This Court docketed the Notice of Appeal on July 7, 2008 [Docket No. 4].

On July 18, 2008, Appellees filed the Dismissal Motion.[2] This is Appellant's answering brief in opposition to the Dismissal Motion.

## SUMMARY OF ARGUMENT

The Court must deny the Dismissal Motion because the *Order Approving Debtor's Proposed Bid Protections*, dated March 18, 2008 [Bankruptcy Court Docket No. 319] (the "Bidding Procedures Order"),[3] which denied a break-up fee to Kelson, by definition was

---

[1]     Appellees filed an opening brief [Docket No. 6] (the "Appellee Brief") in support of the Dismissal Motion.

[2]     Appellant does not believe that Appellee has standing to oppose this appeal as a result of its affirmative support for approval of the Kelson Break-Up Fee at the Bankruptcy Court level. Appellant reserves all rights to challenge Appellee's standing to contest this appeal.

[3]     Appellant has attached a copy of the Bidding Procedures Order as Exhibit "A".

interlocutory until the Bankruptcy Court later entered a final order approving the sale to another buyer.

Bidding procedures orders in bankruptcy "section 363" sales are a preliminary step before the actual consummated sale of assets by a bankruptcy estate. These orders define the terms and conditions upon which parties will bid in bankruptcy auctions, but all such sales are subject to further final order of the bankruptcy court permitting the sale and approving its terms. Thus, as courts have recognized, bidding procedures orders only become final and appealable upon entry of the later order approving the sale and thereby completing the process. If the sale is not approved and, thus, there is no entered sale order, no appeal lies from an earlier bidding procedures order because no actual case or controversy can exist. Accordingly, immediate appeal of a procedures order would present an intermediate request for a potentially unnecessary adjudication where the bankruptcy court has not yet and may never grant actual relief.

Here, Kelson appealed the Bankruptcy Court's refusal to grant it a break-up fee in the Bidding Procedures Order only *after* another bidder prevailed in an auction and the Bankruptcy Court granted relief. That was the point in time that Kelson's harm, the Bankruptcy Court's errant denial of Kelson's break-up fee, ripened. Had, instead, Kelson been the winning bidder or had, instead, the Bankruptcy Court had no sale to approve, there could be no appeal because the break-up fee -- which represents liquidated damages to a buyer for a breach of the contract to sell assets or for failure to consummate (usually due to an overbid) -- only became payable if another bidder actually won the auction and the Bankruptcy Court approved the sale by final order.

Accordingly, the Bidding Procedures Order constitutes an interlocutory order under each of the prongs of the Third Circuit's "pragmatic" test governing bankruptcy appeals. First, the denial of the break-up fee at the time had a negligible, or possibly no effect, on the Debtors'

2

estates. There were at that time at least two circumstances, (1) Kelson as purchaser or (2) denial of the sale, in which the Bankruptcy Court's denial of the break-up fee would not affect the estates at all because it would never become payable. Second, because the Debtors are solvent, only the Debtors' equity holder, Reliant Energy, Inc. ("Reliant Energy"), would be impacted by the third possible outcome; an approved sale to a third-party buyer without payment to Kelson of its break-up fee. Thus, at the time, the denial of the break-up fee even here only negligibly affected the estates from the perspective of the Debtors' creditors. Notably, the Debtors, Appellees here, and Reliant Energy negotiated the break-up fee and supported payment of the break-up fee at the hearing before the Bankruptcy Court. No creditor or equity holder objected to the proposed bidding procedures or the payment of a break-up fee to Kelson. Third, because the Bidding Procedures Order only set forth certain procedures for the proposed sale, further fact finding and a further order of the Bankruptcy Court approving a sale to another winning bidder had to occur before the break-up fee would be payable. Fourth, the Bidding Procedures Order did not have a preclusive effect on litigation. Litigation relating to the sale became fully and finally resolved only after the Bankruptcy Court later entered the order approving the sale to a third party (the "Sale Order"), not the Bidding Procedures Order. Kelson only suffered redressable harm at that time. Finally, judicial economy weighs heavily in favor of a finding that the Bidding Procedures Order is interlocutory. If Kelson were the winning bidder, or if a sale were never approved, the break-up fee would not have been payable, and an immediate appeal of the Bidding Procedures Order would have been a waste of the Court's and the parties' time. Notions of judicial economy require all parties to abide by the outcome of the auction to determine whether an appeal would redress actual harm, not possible harm.

## STATEMENT OF FACTS

On August 20, 2007 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On August 30, 2007, the United States Trustee appointed an official committee of unsecured creditors (the "Committee") in the Chapter 11 cases. Sale Motion ¶¶ 7 & 9.

On February 25, 2008, the Debtors filed the *Debtors' Motion for an Order Authorizing (1) the Sale or Transfer of Certain Assets of the Debtors Free and Clear of Liens, Claims and Encumbrances, (II) the Assumption and Assignment of Certain Executory Contracts and (III) Granting Related Relief* [Bankruptcy Court Docket No. 251] (the "Sale Motion").[4]

The Bankruptcy Court scheduled a hearing on the Sale Motion for April 9, 2008 (the "Sale Hearing"). Bid Protections Motion ¶ 3. Over the course of the nearly ten-month long sale process, the Debtors' management and their financial advisor Houlihan Lokey Howard & Zukin ("HLHZ") contacted over 115 potentially interested purchasers for the Debtors' business. *Id.* ¶ 5. Approximately 38 parties executed confidentiality agreements and 24 parties conducted due diligence. *Id.* The Debtors considered nearly a dozen bids in the first round of bidding and several additional bids in subsequent rounds of bidding. *Id.* Certain of these bids, including at least one made by Fortistar, were contingent upon obtaining third-party financing. Bid Protections Tr. at 19:1-19:25, 21:5-21:22, 26:18-26:21.[5]

Ultimately, the Debtor, and its equity holder, Reliant Energy, selected Appellant as the winning bidder. Bid Protections Motion ¶ 4. Thereafter, on or about February 25, 2008, the Debtors and Kelson entered into an Asset Purchase Agreement (the "Kelson APA") to acquire the Debtors' assets for consideration that would pay all creditors in full and provide a

---

[4]     Appellees have attached a copy of the Sale Motion to Appellee Brief as Exhibit "A".

[5]     Appellees have attached a copy of the Bid Protections Tr. to Appellee Brief as Exhibit "C".

distribution for Reliant Energy's equity position. Bid Protections Tr. at 21:20-22. Moreover, unlike the original offer made by Fortistar, the Kelson APA was not subject to a financing condition.

Because the Kelson APA provided for payment in full to all creditors and to equity, the Debtors argued to the Bankruptcy Court that an auction would be unnecessary in light of the extensive marketing process and that the Court immediately should enter an order approving a sale to Kelson pursuant to the Kelson APA. Sale Motion ¶¶ 15-19. The Kelson APA required the Debtors to seek Bankruptcy Court approval of the Bid Protections if the Bankruptcy Court refused to enter the Sale Order without an auction. Kelson APA § 8.1(d). The Bid Protections provided for a break-up fee of $15 million (the "Kelson Break-Up Fee") payable upon the closing of an "Alternative Transaction." Kelson APA, Schedule 8.1(d). The Kelson Break-Up Fee constituted approximately 3% of the purchase price under the Kelson APA. Sale Motion ¶ 25.

On March 7, 2008, the Debtors filed the *Motion of the Debtors and Debtors-In-Possession to Approve Certain Bid Protections In Connection With the Debtors' Proposed Sale of Substantially All of Their Assets to Kelson Energy IV LLC* [Bankruptcy Court Docket No. 277] (the "Bid Protections Motion").[6] Pursuant to the Bid Protections Motion, the Debtors sought approval of the Bid Protections.

No party holding any creditor or equity interest opposed the Bid Protections Motion. The Debtors (Appellees here), the Committee, and the Debtors' pre-petition secured lenders all supported approval of the Bid Protections, including the Kelson Break-Up Fee. Bid Protections Tr. at 38:1-38:22, 40:13-40:17, 41:11-41:15; *Response of Official Committee of Unsecured*

---

[6]    Appellees have attached a copy of the Bid Protections Motion to Appellee Brief as Exhibit "B".

*Creditors to Debtors' Motion to Approve Certain Bid Procedures In Connection with the*
*Debtors' Proposed Sale of Substantially All of Their Assets to Kelson Energy IV LLC*
[Bankruptcy Court Docket No. 300] (the "Committee Response in Support").[7]  Only Fortistar, a
competing bidder with no claims against the bankruptcy estate, objected.  Bid Protections Tr. at.
37:6-37:17.  At the hearing on the Bid Protections Motion, the Court denied the Debtors' request
to permit an immediate sale to Kelson without an auction and approved certain of the Bid
Protections, but denied the request for approval of the Kelson Break-Up Fee.  *Id.* at 46:3-46:17.
On March 18, 2008, the Bankruptcy Court entered the Bidding Procedures Order.  On or about
April 8, 2008, the Debtors conducted an auction and ultimately selected Fortistar as the winning
bidder.  *Notice of Auction Result and Hearing*, dated April 8, 2008 [Bankruptcy Court Docket
No. 365].[8]

On June 9, 2008, the Bankruptcy Court entered the Sale Order approving the sale of the
Sale Assets to Fortistar.  On June 13, 2008, Appellant filed its Notice of Appeal.

## ARGUMENT

## I.

## THIS APPEAL WAS TIMELY FILED.

**A.    The Standards For Determination Of Finality Of Bankruptcy Orders.**

The Third Circuit has established a "pragmatic" test for the finality of bankruptcy
appeals.[9]  *See Century Glove, Inc. v. First Amer. Bank of N.Y*, 860 F.2d 94, 97 (3d Cir. 1988).
Pursuant to the pragmatic test, the court must balance the following factors:

the impact on the assets of the bankruptcy estate, the necessity for further

---

[7]    Appellant has attached a copy of the Committee Response in Support as Exhibit "B".

[8]    Appellant has attached a copy of the *Notice of Auction Result and Hearing* as Exhibit "C".

[9]    28 U.S.C. § 158(a) governs appeals to district courts from bankruptcy courts.  Section 158(a)(1) gives
district courts jurisdiction to hear appeals "from final judgments, orders and decrees" of bankruptcy courts.

> fact-finding on remand, the preclusive effect of [the court's] decision on
> the merits on further litigation, and whether the interests of judicial
> economy would be furthered.

*Id.*

Courts applying the pragmatic or other similar tests have held that bidding procedures orders are interlocutory. For example, in *In re Integrated Resources, Inc.*, 3 F.3d 49 (2d Cir. 1993), the Second Circuit held that an order approving a break-up fee was interlocutory and non-appealable. [10] *Id.* at 52. In *Integrated Resources*, Bankers Trust, a potential plan financier, entered into a letter of interest with the debtors providing Bankers Trust with a break-up fee and expense reimbursement. *Id.* at 51. The Bankruptcy Court approved the arrangement over the creditors committee's objection. *Id.* at 52. The Second Circuit held that the bidding procedures order was not final because it did not conclusively resolve the issues between the parties. *Id.*

Similarly, in *Farmland Livestock Services v. United Agri Prods., Inc. (In re Farmland Indus.)*, 289 B.R. 122 (8th Cir. B.A.P. 2003), the Eighth Circuit Bankruptcy Appellate Panel held that a bidding procedures order was interlocutory. *Id.* at 126. In *Farmland*, the appellant appealed an order reopening and establishing a bidding and auction process. *Id.* at 124-25. In holding that the bidding procedures order was interlocutory, the Court stated that "if the orders are upheld on appeal, the continued auction will still have to occur, and its results might ultimately be appealed, resulting in piecemeal litigation and repeated appeals." *Id.* at 125.

In *Unsecured Creditors' Committee v. Belgravia Paper Co. (In re Great Northern Paper, Inc.)*, 289 B.R. 497 (Bankr. D. Me. 2003), the bankruptcy court entered an order approving

---

[10]    *See also In re Kurtzman*, 194 F.3d 54, 57 (2d Cir. 1999) (applying a test similar to the Third Circuit's "pragmatic" test and finding that "orders in bankruptcy cases may be immediately appealed if they finally dispose of discrete disputes within the larger case"); *In re Chateaugay Corp.*, 922 F.2d 86, 90 (2d Cir. 1990) ("This pragmatic approach to finality permits the courts to address the specific needs of complex bankruptcy proceedings, but does not overcome the general aversion to piecemeal appeals.").

bidding procedures, including a break-up fee. *Id.* at 498. The district court dismissed as interlocutory the creditors committee's appeal holding that "it is better to wait and to see what develops during the bidding process" before ruling on the propriety of the break-up fee. *Id.*

Appellee relies on *DDJ Capital Management, LLC v. Fruit of the Loom, Inc. (In re Fruit of the Loom, Inc.)*, 274 B.R. 631 (Bankr. D. Del. 2002), for the sweeping statement that all rulings on breakup fees are final orders. Debtors' Br. at 7. However, the *Fruit of the Loom* court makes no universal pronouncement, provides no interpretative analysis of its bare statement, and it is unclear whether any party actually opposed the appeal as interlocutory. The *Fruit of the Loom* decision is also inapposite because it involved the plan confirmation process, not a Section 363(b) sale. Moreover, the *Fruit of the Loom* court overlooks the numerous other courts that have held that rulings on requests for breakup fees are interlocutory.

**B.      The Bidding Procedures Order Was Final**
**Under The Third Circuit's Pragmatic Test.**

> **i.      The Impact Of The Kelson Break-Up Fee Is Negligible.**

The Kelson Break-Up Fee was only $15 million compared with the Debtors' total asset value of $500 million, or less than 3% of the Debtors' estates (based upon the ultimate purchase price of $500 million). Moreover, payment of the Kelson Break-Up Fee affected none of the creditors' recoveries, as the sale paid all creditors in full. It is no surprise, therefore, that no creditors, including the Official Committee of Unsecured Creditors, opposed payment of the Kelson Break-Up before the Bankruptcy Court. The only party affected by payment of the Kelson Break-Up Fee was Reliant Energy, the Debtors' equity holder who negotiated and supported the Kelson Break-Up Fee before the Bankruptcy Court.[11] Thus, the amount of the

---

[11]      On the merits, payment of the Kelson Break-Up Fee actually has little to no affect on the actual bankruptcy estates and prevents substantial unjust enrichment. By denying the payment of the Kelson Break-Up Fee in an instance in which all creditors were being paid in full, the Bankruptcy Court improperly gave a $15

Kelson Break-Up Fee is insignificant based on the magnitude of these cases, the Debtors' asset values, and the projected recoveries to creditors and equity. In addition, the Kelson Break-Up Fee may have had no effect at all on the bankruptcy proceedings because it may have never become payable if Kelson were the winning bidder or if Bankruptcy Court did not approve a sale.

Moreover, the Bidding Procedure Order was merely a procedural order that had no affect on the Debtors' estates. Only the Sale Order impacted on the Debtors' estates by approving a sale and fixing the amounts of distributions to the Debtors' creditors.

> **ii.   The Necessity For Further Fact Finding Renders The Bidding Procedures Order Interlocutory.**

The need for further fact-finding by the Bankruptcy Court also supports a finding that the Bidding Procedures Order was interlocutory. After entry of the Bidding Procedures Order, the Debtors had to conduct an auction under the auspices of the Bankruptcy Court, and the Bankruptcy Court was required to conclude that another bid was higher and better than the consideration provided in the Kelson APA. *Compare In re Elsinore Shore Assocs.*, 82 B.R. 339, 341 (Bankr. D.N.J. 1988) (noting that (i) approval of a disclosure statement is merely a condition precedent to solicitation of a plan and (ii) an appeal of a disclosure statement order will be rendered moot if plan not approved) *with Century Glove, Inc.*, 860 F.2d at 98 ("No more fact-finding is needed. No later decision by either court will affect the order."). Thus, upon entry of the Bidding Procedures Order, the Bankruptcy Court had not effectively resolved the controversy and its remaining tasks were more than ministerial and mechanical.

---

million windfall to the very entity that not only controlled the Debtors, but also agreed to the Kelson Break-Up Fee.

### iii. The Bidding Procedures Order Did Not Have A Preclusive Effect On Litigation.

The Bidding Procedures Order did not have a preclusive effect on further litigation. *See, e.g., In re Fugazy Express, Inc.*, 982 F.2d 769, 776 (2d Cir. 1992) ("[F]or a bankruptcy court order to be final . . . the order need not resolve all of the issues raised by the bankruptcy; but it must completely resolve all of the issues pertaining to a discrete claim, including issues as to the proper relief.") (emphasis added). Only upon entry of the Sale Order was the matter fully and finally resolved. Until that occurred, Kelson could have been the successful bidder. *See Official Comm. of Unsecured Creditors v. Belgravia Paper Co. (In re Great Northern Paper, Inc.)*, 299 B.R. 1, 8 (Bankr. D. Me. 2003) (concluding that it would be possible to judge the effect of a bid procedures order only after bidding had commenced, and that any result of the bidding would not prevent party from raising its arguments later, on a clearer record). Moreover, because the Bidding Procedures Order was merely procedural, it could be subject to multiple appeals -- as a result of the sales process and auction -- giving rise to piecemeal litigation up and until entry of the Sale Order which resolved the matter on a final basis.

### iv. Judicial Economy Militates Heavily In Favor Of Finding That The Bidding Procedures Order Was Interlocutory.

The interests of judicial economy militate against a finding that the Bidding Procedures Order was final. Where, as here, a bankruptcy court order can be rendered moot by a subsequent order, the first order is interlocutory. *See, e.g., Dal-Tile Intl., Inc. v. Color Tile, Inc.*, 203 B.R. 554 (Bankr. D. Del. 1996) (finding reclamation order, which denied any and all physical reclamation claims against the Debtor in exchange for a potential 503(b) claim, was not final "because the issues presented here may be mooted by a later decision of the Bankruptcy Court"); *Official Comm. of Equity Sec. Holders v. Finova Capital Corp. (In re Finova Capital Corp.)*, No. 06-040, 2006 U.S. Dist. LEXIS 19141, at *5-6 (D. Del. Apr. 13, 2006) (finding an order denying

a debtor's request for clarification regarding the impact of the debtor's administrative insolvency on the administration of a confirmed plan was not final in part because "the specter of duplicative appeals, first from the Clarification Order and then from any determination of solvency, the Court is . . . persuaded that the interests of judicial economy will not be served by entertaining an appeal of the Clarification Order at this juncture").

Had Kelson been the winning bidder or had no sale occurred, an appeal of the Kelson Break-Up Fee following entry of the Bidding Procedures Order would have been wasteful because the Kelson Break-Up Fee would never have become payable. Only the entry of the Sale Order -- when the Bankruptcy Court actually approved the sale to another entity -- resolved fully and finally at the trial court level any and all issues relating to the sale. That is when Appellant's harm arose and its appeal became ripe. Prior to the entry of the Sale Order, Kelson's harm was hypothetical and speculative, and appellate "relief" in several circumstances would have proven an actual nullity. "Deciding an issue now, *which may never need to be decided, does not help to advance the litigation*" and is flatly inconsistent with judicial economy. *United States Trustee v. Bethlehem Steel Corp. (In re Bethlehem Steel Corp.),* 2003 WL 21738964, at *4 (S.D.N.Y. July 28, 2003); *see also In re Porter,* 961 F.2d 1066, 1072 (3d Cir. 1992) ("Courts of appeals are generally restricted to hearing only "final" decisions for at least three reasons. First, deciding an interlocutory appeal may prove unnecessary because the issue *may become moot in light of further proceedings in the trial court*.") (emphasis added); *In re Adelphia Communications Corp.,* 333 B.R. 649, 660-61 (Bankr. S.D.N.Y. 2005) ("[T]he Bankruptcy Court's determinations on these issues are not final, because they direct the parties to engage in or participate in further proceedings and do not resolve any substantive issue.").

## CONCLUSION

For the reasons set forth herein, the Court must deny the Dismissal Motion because the

Bidding Procedures Order was interlocutory, and Appellant timely filed its this appeal after the

Bankruptcy Court entered the Sale Order resolving at the trial level all sale related issues.

Dated: August 8, 2008

BIFFERATO GENTILOTTI LLC

By: _____
Garvan F. McDaniel, Esq. (#4167)
800 North King Street
Wilmington, DE 19801
Telephone:    (302) 429-1900

-and-

KASOWITZ, BENSON, TORRES
  & FRIEDMAN LLP

Andrew K. Glenn, Esq.
Jeffrey R. Gleit, Esq.
1633 Broadway
New York, New York 10019
Telephone:    (212) 506-1700
Facsimile:    (212) 506-1800

*Attorneys for Plaintiff*

# EXHIBIT A

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| RELIANT ENERGY CHANNELVIEW LP, *et al.,*[1] | Case No. 07-11160 (MFW) |
| Debtors. | Jointly Administered |
| | **Re: Docket No. 277** |

### ORDER APPROVING DEBTORS' PROPOSED BID PROTECTIONS

This matter coming before the Court on the motion (the "Motion") of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") for entry of an order approving certain bid protections in connection with the proposed transfer and sale of substantially all of the assets of certain Debtors to Kelson pursuant to the terms and conditions of that certain asset purchase agreement, dated February 25, 2008 (the "Asset Purchase Agreement"). The Court has reviewed the Motion and finds that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), (c) notice of this Motion having been provided to, inter alia, the Office of the United States Trustee for the District of Delaware; counsel for the Official Committee of Unsecured Creditors; counsel to the administrative agent for the Debtors' pre-petition lenders (the " Pre-Petition Lenders"); counsel to the Buyer; counsel to Reliant Energy; counsel to Equistar; and all potentially interested purchasers contacted by the Debtors or HLHZ regarding the sale of the Debtors' assets; and all parties requesting notice in these cases pursuant to Bankruptcy Rule 2002; (d) any objections to the Motion have been withdrawn, resolved, or overruled; and (e) capitalized terms not otherwise defined herein have the meaning given to them

in the Motion; and the Court having determined that the legal and factual bases set forth in the

Motion establish just cause for the relief granted herein, and it appearing that the relief requested

is in the best interests of the Debtors' estates and creditors, and other parties in interest;

### IT IS HEREBY ORDERED THAT:

1.    The Motion is GRANTED, as set forth herein.

2.    The Bid Protections set forth in Schedule 8.1(d) to the Asset Purchase
Agreement, ~as modified and~ attached hereto as <u>Exhibit A</u>, which contain, <u>inter</u> <u>alia</u>, provisions concerning the
~9~ ~Break-Up Fee and~ Expense Reimbursement, are hereby approved.

~3.    Subject to the provisions of paragraph 6 below, the Debtors are authorized~
~to pay the Buyer a break-up fee in the amount of $15,000,000 (the "Break-Up Fee") upon closing~
~of an Alternative Transaction~.

4.    Subject to the provisions of paragraph 6 below, the Debtors are authorized

to reimburse the Buyer for reasonable, documented out of pocket expenses not to exceed

$2,000,000 (the "<u>Expense Reimbursement</u>") upon closing of an Alternative Transaction.

5.    Once due, and until paid, the ~Break-Up Fee and the~ Expense

Reimbursement shall be allowed as an administrative claim pursuant to section 503(b)(1)(A) of

the Bankruptcy Code.

6.    Notwithstanding anything to the contrary in the Motion, the Asset

Purchase Agreement or the Sale Motion, for purposes of determining whether the ~Break-Up Fee~

~and/or~ Expense Reimbursement are required to be paid under the terms of this Order, an

Alternative Transaction shall not include any conveyance or transfer of Acquired Assets to the

---

[1] The Debtors are Reliant Energy Channelview LP, Reliant Energy Channelview (Texas) LLC ("<u>General</u> <u>Partner</u>"), Reliant Energy Channelview (Delaware) LLC ("<u>Limited Partner</u>, and together with the General Partner, the "<u>Partners</u>"), and Reliant Energy Services Channelview LLC.

Pre-Petition Lenders in full or partial satisfaction of the outstanding obligations under the Secured Credit Facility, including, without limitation, by way of foreclosure, distribution under a chapter 11 plan, or credit bid under section 363(k) of the Bankruptcy Code; provided that it is understood and agreed that an Alternative Transaction shall include the sale of the Acquired Assets to the Pre-Petition Lenders for consideration consisting of a credit bid and additional consideration that is a Topping Bid. In addition, the ~~Break-Up Fee and~~ Expense Reimbursement shall not become payable until after all allowed secured claims of the Pre-Petition Lenders are satisfied in full.

7.     To the extent that any competing bids are made in connection with the Sale of the Acquired Assets, such bids must be submitted on or before **5 : 00 p**.m. (Eastern Time) on April **3**, 2008 (the "<u>Bid Deadline</u>"), and must be in an amount ~~sufficient to cover~~ _equal to the Base Purchase Price_ ~~fully the Bid Protections afforded to Kelson (inclusive of the Break-Up Fee and Expense Reimbursement)~~, plus $5 million, and must also be accompanied by (a) evidence of such competing bidder's financial wherewithal; (b) a marked copy of the Asset Purchase Agreement of Kelson reflecting all changes made; (c) a clean, executed copy of the Asset Purchase Agreement; and (d) a good faith deposit in the amount of $40 million (collectively, a "<u>Qualifying Bid</u>").

8.     To the extent that any Qualifying Bids are received by the Bid Deadline, an auction of the Acquired Assets will be held at 10:00 a.m. (Eastern Time) on April **7**, 2008 at the offices of Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801.

9.    This Court shall retain jurisdiction to hear and determine all matters

arising from or related to the implementation of this Order.

Dated: March 18, 2008
    Wilmington, Delaware

THE HONORABLE MARY F. WALRATH
CHIEF UNITED STATES BANKRUPTCY JUDGE

# **EXHIBIT A**

Schedule 8.1(d)

Bid Protections

1. ~~Break fee payable on closing of Alternative Transaction[2]: $15,000,000.~~

2. Reimbursement of out of pocket expenses on closing of Alternative Transaction, up to an aggregate of $2,000,000.

3. Topping bid: The initial topping bid must be no less than $5,000,000 higher than an amount equal to the Base Purchase Price ~~plus (i) the $15,000,000 break fee, and (ii) the amount of out of pocket expenses to be reimbursed to Buyer in connection with Item 2 above~~.

4. Sellers will use commercially reasonable efforts to file a motion for the Bidding Procedures Order within 48 hours of the Bankruptcy Court ordering the auction.

5. Sellers will require that as a condition of any Alternative Transaction that such transaction close within 45 days of the date of signing of a definitive Alternative Transaction agreement.

6. Sellers will request that the auction be held within 10 days of the entry of the Bidding Procedures Order.

7. This Agreement remains open as a backup bid if Sellers enter into an agreement for an Alternative Transaction until the earlier of the Termination Date and the closing of the Alternative Transaction, and to the extent that Buyer has provided a deposit, such deposit shall accrue interest until the Alternative Transaction is terminated or the deposit is returned to Buyer.

8. All bids remain open until the closing.

9. The winning bidder must provide a deposit equal to or greater than stalking horse deposit.

10. All bids must be accompanied by evidence of committed financing or other ability to perform.

11. All bids must be accompanied by a contract in execution form and a copy marked against this Agreement.

---

[2] For the purpose of this Schedule 8.1(d), "Alternative Transaction" shall mean: (i) any direct or indirect sale or disposition of all or substantially all of the Acquired Assets (except as expressly permitted under the Agreement) or the capital stock or other equity interests of either Seller, or (ii) any merger, consolidation, business combination, recapitalization, reorganization or other extraordinary business transaction involving or otherwise relating directly or indirectly to either Seller

# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| RELIANT ENERGY CHANNELVIEW | ) | Case No. 07-11160 (MFW) |
| LP, *et al.*, | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | **Objection Deadline: March 14, 2008** |
| | | **Hearing Date: March 18, 2008 @ 10:30 a.m.** |

**RESPONSE OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO
DEBTORS' MOTION TO APPROVE CERTAIN BID PROCEDURES IN CONNECTION
WITH THE DEBTORS PROPOSED SALE OF SUBSTANTIALLY ALL OF THEIR
ASSETS TO KELSON ENERGY IV LLC (DOCKET NO. 277)**

The Official Committee of Unsecured Creditors of Reliant Energy Channelview

LP, *et al* (the "Committee") responds to the Motion of Debtors and Debtors in Possession to

Approve Certain Bid Protections in Connection with the Debtors' Proposed Sale of Substantially

All of Their Assets to Kelson Energy IV LLC (the "Bid Procedures Motion") as follows:

1.      The Committee was appointed and retained counsel and financial advisors

on August 30, 2007.  Shortly afterwards, the Committee and its professionals were advised by

the Debtors, Houlihan Lokey Howard & Zukin ("HLHZ"), which was acting as investment

banker for the Debtors' **parent** company, Reliant Energy, Inc. ("REI"), and counsel for REI that

the Debtors and REI were in the process of marketing the Debtors' co-generation facility (the

"Facility") and expected to have an agreement of sale signed by mid-October.  The Committee

was also informed that REI and the Debtors were developing offers that would be more than

enough to pay off all of the Debtors' obligations, leaving sale proceeds available for equity

interests.

2.      The sale process conducted by HLHZ continued through the fall and into

the winter.  During that time, REI and the Debtors attempted unsuccessfully to finalize an

agreement of sale with Fortistar LLC ("Fortistar").  REI and the Debtors then turned to getting a

deal done with Kelson Energy IV LLC ("Kelson") which shortly thereafter entered into an asset

purchase agreement to purchase the Facility at a base purchase price of $468 million. That

agreement is the subject of the Debtors' Motion, *inter alia*, to sell its assets to Kelson (the "Sale

Motion").

   3.  In the Sale Motion, the Debtors address at some length the disposition of

the Cash Flow Participation Agreement (the "CFPA") entered into between Equistar Chemicals,

LP ("Equistar") and Channelview LP. In particular, the Debtors argue, among other things, that

the CFPA is not an executory contract.

   4.  The Committee supports the relief requested in the Bid Procedures

Motion, *i.e.*, awarding Kelson the bid protection outlined in the Bid Procedures Motion, as

required by the terms of the Asset Purchase Agreement. Kelson has made a valuable and good

faith offer to purchase the Debtors' business and is entitled to the protections sought by the

Debtor. However, for the reasons set forth below, the Committee believes that in addition to

granting the relief requested in the Bid Procedures Motion, the Court should establish procedures

for the submission of competing bids, an auction if there are competing bids and a sale hearing.

   5.  The Committee's support for an auction process is borne out of two

considerations. First, Fortistar, in its preliminary objection to the Sale Motion, has indicated that

it is, perhaps, willing to pay more for the Debtors' assets than the amount of the Kelson offer. If

this is true, and Fortistar is prepared to make and close on a higher and better offer, all parties

will benefit from the auction process.

   6.  Second, the Committee is concerned that the net consideration received by

the Debtors' estate under the Kelson offer will not be enough to pay all the Debtors' liabilities,

including amounts due under the Secured Credit Facility, administrative, priority and general

-2-

unsecured claims. In particular, it is not clear what the total unsecured claims against the estate will be and whether or not there will be enough money to pay them.

7.    The Sale Motion is less than clear with respect to this latter point. At paragraph 33 of the Sale Motion, the Debtors state that "the anticipated gross proceeds of the Sale are **expected** to exceed the total amount of the **existing** claims against the Debtors estate." (Emphasis Added). This carefully worded statement is hardly a clear commitment that the proceeds of the sale will pay creditors in full.

8.    The concern that the proceeds from the sale to Kelson will not be enough to pay creditors is exacerbated by several other factors. First, the Settlement Agreement with Equistar requires that the Debtors close on a sale by March 31, 2008. If that does not happen, Equistar may assert a claim of $37 million; instead of the $10 million due under the Settlement Agreement.

9.    Next, the Debtors take the position in the Sale Motion that any claim Equistar has under the CFPA can be satisfied from the proceeds of the sale. For example, in paragraph 67 of the Sale Motion, the Debtors say, in pertinent part, that "[a]s a non-executory contract relating to the payment of money, Equistar's claim under the CFPA (once liquidated) can be satisfied from the proceeds received by Channelview from the Acquired Assets." Again, in paragraph 68 of the Sale Motion, the Debtors say they "are not assuming and assigning the CFPA in connection with the Sale and, instead, expect to satisfy Equistar's . . . interest . . . by distributing to Equistar its fair share of the net proceeds (*i.e.* sale proceeds remaining after satisfaction of all other claims against the Debtors ) derived from the Sale . . . ." The problem is that the size of Equistar's claim -- or the priority of that claim – are not known at this time. While the Committee reserves all of its rights with respect to these issues, assuming those claims

-3-

could be very substantial. Thus, it will benefit all constituencies if the Debtors attempt to maximize the value of their assets through an auction process.

10. The final concern which the Committee believes lends support to a competitive bidding process is the existence of indebtedness of approximately $42 million under two Subordinated Intercompany Promissory Notes, owed by Reliant Energy Channelview LP to Reliant Energy Channelview (Delaware) LLC. The Committee does not yet know if these obligations are or should be subordinated to general unsecured claims but the resolution of issues like this becomes easier if the proceeds of any sale are increased.

WHEREFORE, the Committee respectfully requests that the Court grant the relief requested in the Bid Procedures Motion but condition that relief by requiring the Debtors to conduct an auction process with respect to the sale of the Facility.

Dated: March 13, 2008
      Wilmington, DE

                        Respectfully submitted,

                        PEPPER HAMILTON LLP


                        /s/ David B. Stratton
                        David B. Stratton (DE No. 960)
                        Evelyn J. Meltzer (DE N0. 4581)
                        Hercules Plaza, Suite 5100
                        1313 North Market Street
                        Post Office Box 1709
                        Wilmington, Delaware 19899-1709
                        Telephone: (302) 777-6500
                        Facsimile: (302) 421-8390

                        -and-

-4-

Francis J. Lawall, Esq.
Bonnie MacDougal Kistler, Esq.
Pepper Hamilton LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, Pennsylvania 19103-2799
Telephone: (215) 981-4000
Facsimile: (215) 981-4000

*Counsel for Official Committee of Unsecured
Creditors*

#9428630 v2

# EXHIBIT C

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>RELIANT ENERGY<br>CHANNELVIEW LP, *et al.,*[1]<br><br>           Debtors. | Chapter 11<br><br>Case No. 07-11160 (MFW)<br><br>Jointly Administered<br><br>Re: Docket Nos. 251 and 319 |

## NOTICE OF AUCTION RESULT AND HEARING

PLEASE TAKE NOTICE that on February 26, 2008, the above-captioned debtors and debtors-in-possession (the "Debtors") filed the **Motion of the Debtors and Debtors-In-Possession Pursuant to Sections 105(a), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9007 and 9014 for an Order Authorizing (I) the Sale or Transfer of Certain Assets of the Debtors Free and Clear of Liens, Claims and Encumbrances, (II) the Assumption and Assignment of Certain Executory Contracts, (III) and Granting Related Relief** [Docket No. 251] (the "Sale Motion") with the United States Bankruptcy Court for the District of Delaware, 824 Market Street, 3rd Floor, Wilmington, Delaware 19801 (the "Bankruptcy Court").

PLEASE TAKE FURTHER NOTICE that on March 17, 2008, the Court entered the **Order Approving Debtors' Proposed Bid Procedures** [Docket No. 319] with respect to the Sale Motion (the "Bid Procedures Order").

PLEASE TAKE FURTHER NOTICE that in accordance with the Bid Procedures Order, an auction was held on April 8, 2008 at the offices of Richards, Layton & Finger, P.A. (the "Auction").

---

[1] The Debtors are Reliant Energy Channelview LP, Reliant Energy Channelview (Texas) LLC, Reliant Energy Channelview (Delaware) LLC, and Reliant Energy Services Channelview LLC.

PLEASE TAKE FURTHER NOTICE that at the conclusion of the Auction, the Debtors' announced GIM Channelview Cogeneration, LLC as the highest and best bidder.

PLEASE TAKE FURTHER NOTICE that a hearing on the Sale Motion and the proposed sale to GIM Channelview Cogeneration, LLC will take place on April 9, 2008 at 9:30 a.m. before the Honorable Mary F. Walrath at the Bankruptcy Court.

Dated: April 8, 2008
       Wilmington, Delaware

Respectfully submitted,

Mark D. Collins (No. 2981)
Paul N. Heath (No. 3704)
Jason M. Madron (No. 4431)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Tel: (302) 651-7700
Fax: (302) 651-7701

*Attorneys for the Debtors and Debtors-in-Possession*

2

## CERTIFICATE OF SERVICE

I, Garvan F. McDaniel, hereby certify that on this, the 8th day of August, 2008, a copy of the foregoing **APPELLANT'S ANSWERING BRIEF IN OPPOSITION TO MOTION TO DISMISS APPEAL OF KELSON CHANNELVIEW LLC (f/k/a KELSON ENERGY IV LLC)** was caused to be served on the parties listed on the attached service list in the manner indicated.

_____
Garvan F. McDaniel, Esq. (#4167)

Local Via Hand Delivery  -  Non-Local Via First Class Mail

Marcos A. Ramos, Esquire
Richards, Layton & Finger
One Rodney Square
Wilmington, DE 19801

Jonathan B. Alter, Esquire
Bingham McCutchen LLP
One State Street
Hartford, CT 06103

Robert J. Dehney, Esquire
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street, 18th Floor
Wilmington, DE 19801

Bonnie Glantz Fattell, Esquire
Blank Rome LLP
1201 Market Street, Suite 800
Wilmington, DE 19801

Mark S. Finkelstein, Esquire
Shannon Martin Finkelstein & Alvarado,
P.C.
2400 Two Houston Center
909 Fannin Street
Houston, TX 77010

Laura Davis Jones, Esquire
Pachulski, Stang, Ziehl & Jones LLP
919 N. Market Street, 16th Floor
Wilmington, DE 19801

Bonnie Steingart, Esquire
Fried, Frank, Harris, Shriver & Jacobson
LLP
One New York Plaza
New York, NY 10004

Mark S. Kenney, Esquire
Office of the United States Trustee
844 King Street, Suite 2313, Lockbox 35
Wilmington, DE 19801

David B. Stratton, Esquire
Pepper Hamilton, LLP
1313 Market Street, Suite 5100
Wilmington, DE 19801

Francis J. Lawall, Esquire
Pepper Hamilton LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103

Gregory Werkheiser, Esquire
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street, 18th Floor
Wilmington, DE 19801

Lawrence M. Handelsman, Esquire
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038